Filed 1/26/15  P. v. Orozco CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C073936 |
| Plaintiff and Respondent, | (Super. Ct. No. 10F05904) |
| v. | |
| JUAN CARLOS OROZCO, | |
| Defendant and Appellant. | |

Sixty-nine-year-old Galen May died from a combination of stab wounds inflicted by a screwdriver to his neck and chest, and asphyxia from two plastic bags over his head, cinched tightly by a belt.  Defendant Juan Carlos Orozco, whose fingerprints were found on one of the plastic bags over the victim's head and who was a possible contributor to the DNA on the cord binding May's ankle, admitted taking the victim's car and using his bank card but insisted the victim was already dead when he entered his apartment, purportedly to return keys he found by some rocks outside next to the stairs.  Rejecting the "phantom friend" defense, a jury convicted defendant of special circumstance murder during a burglary, robbery, and the infliction of torture; first degree residential burglary;

1

first degree robbery; and car theft. The jury found true the allegations defendant had used deadly weapons, a screwdriver and a belt, during the commission of the murder.

Defendant concedes that two of the four issues he asserts on appeal are raised only for purposes of federal review. The Attorney General concedes sentencing error. Thus, the only real issue on appeal is whether the trial court misinstructed the jurors they did not have to unanimously agree on the theory of murder. The judgment is modified to stay a weapons-use enhancement of one year on two counts pursuant to Penal Code section 1170.1 and is affirmed in all other respects.

**FACTS**

Defendant, a felon, testified at trial that he beat his girlfriend Judith Sepulveda, the mother of his two children. He was 6 feet 3 inches tall and weighed 230 pounds. In August 2010 Sepulveda worked full time, and defendant was unemployed. They lived in the same apartment building as the victim. Fed up in part because defendant failed to pick up the children from their after-school program and had watched television and slept rather than cleaning the apartment, on the evening of August 25, 2010, she told him to leave the apartment. She went to bed but kept her car keys with her. She awoke around midnight and saw defendant standing in the living room. She said, "I don't know what you're doing. I don't know what you're up to. I don't know what you're on, but you need to get out of my house." There were no witnesses and none of the neighbors heard the victim in distress.

Defendant testified that while he was smoking outside his apartment sometime between 3:00 a.m. and 5:00 a.m. he saw some keys on the ground, and by clicking on the remote device, he determined that they belonged to his upstairs neighbor. Although he claimed he did not know his neighbor, he wanted to return the keys, so he walked upstairs, only to discover the door ajar and a body on the floor. He went in and touched the body to determine if he was dead. At that point, he testified he "got freaked out," ran downstairs, and grabbed a bag of his clothes from his patio; without warning his

2

girlfriend or calling the police, he stole May's car and drove to the Bay Area, then on to Salinas.

Defendant admitted he used the deceased's bank card to buy gas and other items, but he denied knowing the PIN (personal identification number).  Yet a surveillance camera captured him using an ATM machine and receiving a receipt.  A bank official testified that the machine would not dispense a receipt unless the PIN had been accurately entered.  Defendant testified the paper he was holding was a tissue.  He also told the jury he could not remember what happened to the clothes he was wearing the night of the murder, including his shoes and beanie.  He sold the stereo and the rims from the tires before abandoning the car.

The victim weighed 164 pounds and was 5 feet 9 inches tall.  By all accounts, he was a fastidious man, yet there were no sheets on his bed when his body was found.  His friends agreed he would not have slept on a bed without sheets.  The apartment was neat and tidy.  His friends also asserted that the victim consistently kept his wallet in his back pocket.  Although there were no signs of forced entry, the victim's wallet, car keys, bank card, driver's license, and credit cards were missing.

The coroner testified that the clustering of the victim's rectangular puncture wounds in four different areas suggested they were inflicted in a frenzy with a standard screwdriver.  Thirteen of the puncture wounds were to the right-side jawline extending down his neck, seven to his chest area, and another six to his abdomen.  Three latent fingerprints from the outer plastic bag around the victim's head and a print from a receipt positively matched defendant.  A criminalist testified she found DNA on the ligature around the victim's ankles.  The DNA was a mix from two people, one of whom was the victim.  The remaining profile fully matched defendant's at four loci, and several other loci were consistent with defendant's profile.

3

## DISCUSSION

## I

Borrowing an argument successfully raised in *People v. Sanchez* (2013) 221 Cal.App.4th 1012 (*Sanchez*), defendant contends the trial court hopelessly and unconstitutionally confused the jurors by instructing them that they need not agree on the theory of murder even though they needed to agree on the degree of murder. Defendant creatively marshals an array of circumstances that, in his view, led inexorably to potential juror confusion, including the order in which the instructions were delivered, the opening and closing arguments by counsel, and the surprise introduction of second degree murder instructions. We reject his clever, if misguided, attempt to conscript the principles enunciated in *Sanchez* to facts bearing no resemblance to the facts underlying the *Sanchez* analysis.

But first we must summarize the most basic principles guiding our review of alleged instructional error. "A defendant challenging an instruction as being subject to erroneous interpretation by the jury must demonstrate a reasonable likelihood that the jury understood the instruction in the way asserted by the defendant. [Citations.]" (*People v. Cross* (2008) 45 Cal.4th 58, 67-68.) To determine whether there is a reasonable likelihood the jury misconstrued or misapplied the law, we must consider the jury instructions as a whole, the entire record of the trial, and the arguments of counsel. (*People v. Carrington* (2009) 47 Cal.4th 145, 192; *People v. Kelly* (1992) 1 Cal.4th 495, 525-526.) We credit the jurors with both intelligence and common sense, and will assume they do not abandon either virtue during trial. (*People v. Coddington* (2000) 23 Cal.4th 529, 594, overruled on other grounds in *Price v. Superior Court* (2001) 25 Cal.4th 1046, 1069, fn. 13.) Our review is de novo. (*People v. Shaw* (2002) 97 Cal.App.4th 833, 838.)

Jury unanimity is guaranteed by the due process clauses of the federal and state Constitutions. (*People v. Arevalo-Iraheta* (2011) 193 Cal.App.4th 1574, 1588.) The

unanimity instruction eliminates the danger a criminal defendant will be convicted without the jurors agreeing on a single offense. (*People v. Melhado* (1998) 60 Cal.App.4th 1529, 1534.) As a result, the trial court must instruct sua sponte on unanimity. (*People v. Riel* (2000) 22 Cal.4th 1153, 1199.)

The Attorney General has no quarrel with these fundamental principles. Indeed, she contends the jury was instructed on unanimity. She further contends there is no reasonable likelihood the jury misconstrued or misapplied the unanimity requirement given the instructions as a whole, the theories upon which the case was tried, and the arguments of counsel. She insists that *Sanchez*, *supra*, 221 Cal.App.4th 1012 bears no resemblance to the case before us. We agree.

The jury was instructed on alternate theories of murder, including murder with malice aforethought and felony murder, as well as the different degrees of murder. (CALCRIM Nos. 500, 520, 521, 540A, 548, 549.) Recognizing that the prosecution had pursued alternate theories, the trial court instructed the jury as follows: "The defendant has been prosecuted for murder under two theories: (1) malice aforethought, and (2) felony murder. [¶] Each theory of murder has different requirements, and I will instruct you on both. [¶] You may not find the defendant guilty of murder unless all of you agree that the People have proved that the defendant committed murder under at least one of these theories. You do not all need to agree on the same theory." And the court further instructed the jury on the nuances of both theories as promised.

There is, of course, a critical distinction between theories of murder and degrees. While the jurors need not agree on a specific theory of murder, they must unanimously agree on the degree. (Pen. Code, § 1157.) In that vein, the court instructed the jurors that "[i]f you decide that the defendant committed murder, it is murder of the second degree unless the People have proved beyond a reasonable doubt that it is murder of the first degree." (CALCRIM No. 520.) Similarly, the court explained that "[t]he People have the burden of proving beyond a reasonable doubt that the killing was first degree murder

5

rather than a lesser crime. If the People have not met this burden, you must find the defendant not guilty of first degree murder." (CALCRIM No. 521.) Of particular significance, the court expressly instructed the jurors with CALCRIM No. 640 that they must unanimously agree on whether the murder was in the first or second degree. The court reiterated the necessity for unanimity with CALCRIM No. 3550, again instructing them that "[y]our verdict on each count and any special findings must be unanimous. This means that, to return a verdict, all of you must agree to it."

While the jury was instructed on second degree murder, presumably as a lesser included offense, the case was tried exclusively on various theories of first degree murder. Thus, the court explained that defendant could be found guilty of first degree murder if the jurors found he premeditated the murder, tortured the victim, or committed the murder during a robbery or burglary. Both the prosecutor and defense counsel argued that the murder was murder in the first degree. The prosecutor told the jury that "[i]n this case a first degree murder is alleged." She concluded: "So those are, again, the decisions you have to make about the murder. You determine malice aforethought, express or implied malice. That gets you to a murder. Then you determine if first degree. There are the three theories: Premeditated and deliberate, torture intended, which caused death, and felony murder. You determine your uses, personal use. And then you determine those specials: Commission of burg., commission of robbery and murder involving infliction of torture with an intent to kill, okay."

Defense counsel echoed the prosecutor. He argued, "This is an all-or-nothing case. Either he killed him or he didn't." Discussing degrees of murder, he told the jury, "There's different levels, different assignments of responsibility. That's not this case. Either Mr. Orozco did this, or he didn't do it."

No one argued that defendant should be convicted of second degree murder, nor did the jurors inquire about second degree murder. The jury found defendant guilty of

6

first degree murder and found true both felony-murder special circumstances and the torture-murder special circumstance.

The trial of Cesar Sanchez was very different. He, unlike defendant, was not alleged to be the perpetrator. (*Sanchez*, *supra*, 221 Cal.App.4th at p. 1014.) He was prosecuted on separate theories of aiding and abetting: (1) first degree felony murder if the murder was committed during the course of a kidnapping, and (2) second degree murder if the murder was the natural and probable consequence of an assault. (*Id*. at p. 1019.) The prosecutor requested instructions on both degrees of murder, which, unlike our case, coincided with the separate theories of murder (*ibid*.), and argued both theories (first and second degree murder) to the jury (*id*. at p. 1022).

The factual circumstances of the murder in *Sanchez* were far more susceptible to different degrees of murder. In *Sanchez*, the victim was shot and killed following a dispute over drugs and money. (*Sanchez*, *supra*, 221 Cal.App.4th at p. 1014.) Many people were involved in the dispute. (*Id*. at pp. 1016-1017.) Under one scenario presented by the prosecution, the defendant aided and abetted others who targeted the victim for an assault, and the murder was the natural and probable consequence of that assault. Under that scenario, the defendant was guilty of second degree murder. (*Id*. at p. 1022.) Under the prosecution's second scenario, the defendant aided and abetted the others in kidnapping the victim, and he was murdered in the course of the kidnapping. If the jury accepted this version of the facts, the defendant was guilty of first degree felony murder. (*Ibid*.)

Following instructions, the jury requested more information on the difference between first and second degree murder and, in particular, a definition of second degree murder. (*Sanchez*, *supra*, 221 Cal.App.4th at pp. 1022-1023.) The court, as here, instructed the jurors pursuant to CALCRIM No. 548 that they did not need to agree on the same theory of murder. (*Sanchez*, at p. 1023.) But in *Sanchez*, unlike the case before us, the two different theories also constitute two different degrees of murder. Sanchez

7

argued the instruction negating the need for unanimity as to the theory of guilt conflicted with the instruction requiring unanimity on the degree of murder. (*Id*. at p. 1019.) He asserted that if the jury followed the clarifying instruction negating unanimity, all of the jurors might have agreed the defendant committed murder, but it could not be determined whether they unanimously agreed he committed murder in the first degree. (*Ibid*.)

The Court of Appeal agreed and reversed the judgment. The court explained: "Unanimity was required in this case as to the theory of guilt as a result of different theories supporting different *degrees* of murder. The prosecutor understood the need for unanimity at the time he requested instructions on natural and probable consequences, specifically telling the trial court the jury could return a verdict of murder in the first or second degree, depending on what theory they unanimously agreed upon." (*Sanchez*, *supra*, 221 Cal.App.4th at p. 1025.) But the court's supplemental instruction in response to the jury query undermined the notion of unanimity. The court concluded, "There is no way to determine, on the record presented, whether the jury followed the instruction during deliberations stating unanimity was not required, or the earlier instruction pursuant to CALCRIM No. 640, which set forth a different approach to the verdict forms on both degrees of murder." (*Sanchez*, at p. 1025.)

In this case, the prosecution charged and tried the case as first degree murder. Although the prosecution presented different theories of first degree murder, it did not present evidence or argue to the jury that defendant might have committed murder in the second degree. In contrast to *Sanchez*, the different theories of guilt for murder did not support different *degrees* of murder. Defendant does not challenge the principle that a jury need not agree on the theory of first degree murder, only that it must agree on the degree. Based on the entire record of this trial, including all of the instructions and argument of counsel, we conclude there is no reasonable likelihood the jurors would have misconstrued the instructions in the manner suggested by defendant. That is to say, there

is no reasonable likelihood that the jurors did not unanimously agree defendant was guilty of murder in the first degree.

Most obviously, the jury gave no indication it was confused by the unanimity instructions or the differences between first and second degree murder. Second, the instructions, when taken as a whole, distinguished first from second degree murder and specifically instructed the jurors they must all agree on the degree. In a case tried on the exclusive theory that the perpetrator of May's murder, either by premeditation, torture, or in the course of the commission of a felony, was guilty of a first degree murder and the only issue was whether that perpetrator was or was not defendant, there is no reasonable likelihood the jurors would have disregarded the unanimity instruction as to degree simply because they were not required to agree on the specific theory of first degree murder. Third, we reject defendant's far-fetched notion that the order in which the instructions were delivered, particularly when second degree murder was not argued at trial, hopelessly confused the jurors. The jurors were also instructed that some of the instructions might not apply and to follow only those instructions that did apply to the facts as they found them. (CALCRIM No. 200.) As pointed out above, we continue to have faith in the intelligence and common sense of jurors and their ability to apply those instructions applicable to the facts as they determine them to be. Simply put, the dangers posed in *Sanchez*, where the different theories of murder were synonymous with the different degrees of murder, are not presented when the different theories were only as to first degree murder and the case was not tried or argued as second degree murder. There was no instructional error because there was no reasonable likelihood the jury disregarded the unanimity requirement when determining the degree of the murder.

## II

Defendant raises two issues to preserve them for federal review but acknowledges they have been resolved against him by the California courts.

First, defendant asserts the trial court erred by instructing the jury that motive is not an element of murder by torture, an instruction that negates the element of sadistic purpose in the first degree murder by torture instruction. The California Supreme Court rejected the identical contention in *People v. Whisenhunt* (2008) 44 Cal.4th 174, 218. The court explained, " 'Motive describes the reason a person chooses to commit a crime. The reason, however, is different from a required mental state such as intent or malice.' [Citation.]" (*Ibid.*) We echoed the Supreme Court in *People v. Hamlin* (2009) 170 Cal.App.4th 1412, recalling, "[M]otive is not an element of the crime of murder by torture, even though one of the essential elements of that crime is that the prohibited act be committed with the intent to cause pain for a specific purpose." (*Id.* at p. 1453.)

Second, defendant contends the felony-murder special circumstances are unconstitutional because they do not adequately narrow the class of persons subject to a sentence of life in prison without the possibility of parole. Defendant concedes that the California Supreme Court has consistently rejected the claim that felony-murder special circumstances do not adequately narrow the class of persons subject to the death penalty. (*People v. Gamache* (2010) 48 Cal.4th 347, 406; *People v. Pollock* (2004) 32 Cal.4th 1153, 1195.) Moreover, even the federal narrowing principle does not apply to life without parole sentences, but only to sentences of death. (*Harmelin v. Michigan* (1991) 501 U.S. 957, 995-996 [115 L.Ed.2d 836, 865].) Under California law, defendant's claim fails.

### III

The Attorney General agrees with defendant that one of the one-year weapon enhancements imposed for counts one and three must be stayed pursuant to Penal Code section 1170.1. Section 1170.1, subdivision (f) provides, in part: "When two or more enhancements may be imposed for being armed with or using a dangerous or deadly weapon or a firearm in the commission of a single offense, only the greatest of those enhancements shall be imposed for that offense. . . ." In *People v. Jones* (2000)

82 Cal.App.4th 485, 492-493 the Court of Appeal found the trial court's imposition of two sentence enhancements for using two different weapons to accomplish a single crime violative of section 1170.1, subdivision (f).  Similarly, here the jury found defendant used a screwdriver and a belt, and the trial court erroneously imposed two weapon enhancements as to counts one and three.  We agree with the parties that pursuant to the express terms of section 1170.1, one of the two one-year enhancements imposed for each count must be stayed.

## DISPOSITION

We modify the judgment to stay one weapons-use enhancement each on counts one and three.  The trial court is directed to prepare an amended abstract of judgment and to send a certified copy thereof to the Department of Corrections and Rehabilitation.  In all other respects, the judgment is affirmed.


                                                                          RAYE              , P. J.



We concur:



          BUTZ              , J.



          DUARTE          , J.


11